**MARY M., individually and as parent/next friend for Diane M., a minor, Plaintiff–Appellant,**

v.

**NORTH LAWRENCE COMMUNITY SCHOOL CORPORATION, Defendant–Appellee.**

No. 97–1285.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 20, 1997.

Decided Dec. 12, 1997.

Rehearing Denied Jan. 23, 1998.

Michael K. Sutherlin (argued), Sutherlin & Associates, Indianapolis, IN, for Plaintiff–Appellant.

Darla S. Brown (argued), Jennifer A. Bauer, Kelley, Belcher & Brown, Bloomington, MN, Bruce A. Hewetson, Donovan, Emery & Hewetson, Bedford, IN, for Defendant–Appellee.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

On May 21, 1993, Diane M., a thirteen year old eighth grader at Bedford Junior High School, was seduced by a twenty-one year old cafeteria worker named Andrew Fields. Diane's mother, Mary M., sued the North Lawrence Community School Corporation and various individuals on her daughter's behalf, alleging violations of 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Summary judgment was granted on the § 1983 count and on the Title IX count in favor of various individual defendants, leaving only the count against Andrew Fields and the North Lawrence Community School Corporation. Fields and Mary M. settled on the eve of trial, and the case proceeded against North Lawrence Community School Corporation. At trial, Chief Judge Sarah Evans Barker ruled that "welcomeness" was an issue properly before the jury, and allowed evidence of Diane's responses to Fields' advances. The jury returned a verdict finding the defendant liable, but awarded plaintiff nothing in compensatory and punitive damages. Because we find that the issue of welcomeness was improperly before the jury, we reverse.

## BACKGROUND

The disturbing facts of this case began in April of 1993, when Diane M. was a thirteen year old eighth grade student at Bedford Junior High School and Andrew Fields was a twenty-one year old cashier and fry cook employed by the school. Bedford Junior High School is operated by the North Lawrence Community School Corporation ("NLCSC"), the defendant in this case.

Diane M. and Andrew Fields met in the school lunch room in April 1993 when Diane passed through Fields' cashier line. By the end of the month, Fields was flirting with Diane. Diane and her friends thought being the object of attention of a twenty-one year old was neat, and Diane responded. Fields began passing suggestive notes to Diane while she stood in the lunch line, and their relationship graduated to phoning each other. Diane's parents were totally unaware that the two were "dating." Diane's friends, however, did know of the relationship, and many were privy to Fields' notes. At trial, the girls expressed their naivete as to the suggestive comments in Fields' notes, stating that "we had never heard some of the things that were said in the notes before."

On May 7, 1993, Fields attended a school dance as a chaperon. He and Diane M. danced together most of the evening. None of the seventeen to twenty-one school employees present at the dance reported any inappropriate touching between Diane and Fields, although several of Diane's friends testified at trial that the two were openly touching and kissing and had to be physically separated by a chaperone. Additionally, none of the chaperones questioned the fact that Diane and Andrew left the dance together. School chaperones in attendance that evening denied witnessing any such activities.

Following the dance, Diane and Fields became the talk of the eighth grade. According to Diane, the Monday following the dance she was approached and questioned by three teachers about her involvement with Fields. Again, all of the teachers denied these conversations occurred.

Diane and Fields' relationship continued, and he soon began waiting for her in the gym after school to give her a ride home. Diane's parents were still unaware of their daughter's involvement with Fields. Diane was careful to hide her relationship with Fields from her parents because she knew that her mother thought she was too young to date. According to the plaintiff, Diane's teachers were also aware of this fact. Mary M. testified at trial that she had expressed her prohibition against dating to one of Diane's teachers, and had instructed the teacher to contact her if she noticed or heard of Diane carrying on with any boys. The teacher denied the conversation. According to Diane and her friends, the teacher was aware of Diane and Fields' relationship.

One month into their relationship, Diane and Fields decided to skip school and work together, respectively. They devised a plan whereby Diane left home as usual on Friday, May 21, but rather than going to her bus stop, she met Fields at a local gas station. Fields picked up Diane at the gas station, and the two then drove to Diane's friend Christy Skein's house. By 9:00 a.m. Diane and Fields were alone in the Skeins' home, with Christy and her brother at school. Pre-

tending to be Diane's mother, Mrs. Skein called Jimmy Pounds, the school principal, from her job and informed Mr. Pounds that Diane was sick and would not be attending school that day. When asked by Principal Pounds for a telephone number where she could be contacted, Mrs. Skein said that she did not know her phone number, that "they told me to say this," and hung up.[1]

According to testimony adduced at trial, Principal Pounds was aware that Diane M. and Fields intended to skip school/work on May 21, having been informed on May 20 by both a student and by the director of transportation. Tony Warren, a classmate of Diane's, informed Principal Pounds that Diane was planning to skip school the next day with a cafeteria worker, and that Diane and this cafeteria worker had been on a date May 7, the night of the school dance. Principal Pounds testified that he did not believe this rumor to be true, as Tony Warren was "the biggest gossip at Bedford Junior High School." Pounds stated on cross-examination that he also did not believe Warren because of the recent publication of a picture of Fields and his fiancee in the Bedford paper.

Principal Pounds also received information as to Diane and Fields' plans to spend May 21 together from Wendell Bailey, the director of transportation. Wendell Bailey informed Pounds the afternoon of May 20 that a school bus driver overheard three or four girls talking about Diane's planned absence the next day. According to Pounds, Bailey told him that the bus driver heard that Diane was going to spend the day at Spring Mill Park with "the french frier." Pounds' response to Mr. Bailey: "we've heard the girl is going to be absent." Whether Pounds found Mr. Bailey any more reliable than Tony Warren is unclear.

The following morning, before the start of school, Pounds' secretary handed him a hand-written note from Tony Warren providing Pounds with Diane's parents' phone number. In its entirety, the typed-written, unsigned note read as follows:

Mr. Pounds,

---

1. Mrs. Skein subsequently disappeared and was therefore unavailable at trial.

Here is the <u>real</u> phone number that will get you to [Diane M.'s] trailer, but <u>don't</u> tell her or anyone else that I gave you the information that I gave you yesterday, or that I gave you the number. It's [000–0000]. That number will put you right to her mom & dad.

That is the number where they live. [000–0000].

(emphasis in original).

Despite his testimony that he did not believe the rumor that Diane and Fields were planning to spend the day together, Principal Pounds told his secretaries to be on the lookout for Diane's name on the absentee list. After receiving the phony call from Mrs. Skein, Principal Pounds checked to see if Fields had reported for work. Only upon learning that he had not did Pounds telephone Diane's mother. He advised Mary M. that Diane had skipped school and might be spending the day with an unnamed, older male. When asked by Mary M. for the name of this boy and any additional information, Principal Pounds replied that he could not tell her anything until he had more facts. Pounds never called Mary M. back with Fields' name or additional facts.

After telephoning Mary M., Pounds talked with Carol Powell, a school counselor, who reported to him that two students told her that Diane M. was skipping school with Andrew Fields. Pounds told Powell to call the Welfare Department.

Meanwhile, back at the Skeins' house, Fields went out to a nearby convenience mart to call in sick to work (the Skeins did not have a telephone). When he returned, the two listened to the radio and danced a little until Fields seduced Diane. They had sexual intercourse for the first and only time and then spent the rest of the day at Spring Mill Park. Fields then dropped Diane off at the same gas station where he picked her up earlier in the day.

Diane returned home that afternoon as if she had been in school all day. Her fears of being, in her words, "busted" for skipping school were soon confirmed when her mother returned home from work. When asked about skipping school, Diane did not tell her mother the truth about how she spent her day; rather, Diane said that she skipped school with her friend Christy and another boy named Matt.

When school resumed the following Monday, counselor Carol Powell withdrew Diane from class and escorted her to Principal Pounds' office. Powell took a statement from Diane in which Diane lied about the events of May 21 by denying that she and Fields had sexual intercourse. Powell read Diane's statement to Pounds and Assistant Superintendent Turner, and Diane was asked to sign her statement. By the end of the school day, Andrew Fields was fired.

Also on that Monday, Diane told her mother the truth about what happened on the day she skipped school. Her mother took her to the hospital emergency room, where she was given a pelvic exam, a pregnancy test, and an AIDS test. Mary M. also took Diane to the police station. Criminal charges were eventually, and reluctantly, filed against Fields for child molestation. Following a bench trial, Fields was convicted of the charge and sentenced to six years incarceration, two years executed and four years suspended, at the Indiana Department of Corrections. Fields actually served only one year of his two year executed sentence, being released early pursuant to Indiana good time credit rules.

Mary M., on behalf of her daughter Diane M., brought this lawsuit against NLCSC and various school officials and employees, including Andrew Fields, alleging violations of 42 U.S.C. § 1983 and of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. The district court, Judge S. Hugh Dillin, granted partial summary judgment for defendants on April 2, 1996, resulting in the dismissal of the § 1983 claim and of all party defendants except Andrew Fields. On the eve of trial plaintiff settled with Fields, leaving only a Title IX claim against NLCSC to be resolved. NLCSC moved for summary judgment on Mary M.'s Title IX claim, which Judge Dillin denied.

The case was then reassigned to Chief Judge Sarah Evans Barker, and a five day jury trial ensued. The jury returned a verdict in favor of Diane M. on the issue of

liability, but did not award her any compensatory or punitive damages. Plaintiff's main contention on appeal is that the district court judge erred in permitting the question of "welcomeness" to be placed before the jury. In a pre-trial ruling, Judge Barker held that welcomeness was a question of fact reserved for the jury and not a question of law. The judge ruled that to state a claim for relief under Title IX, the plaintiff must prove the following elements: (1) Diane M. was subject to unwelcome sexual advances and/or abuse by Andrew Fields; (2) the advances and/or abuse were sufficiently severe or pervasive so as to alter the conditions of Diane M.'s education and create a hostile or abusive educational environment; (3) the school corporation knew or should have known of the alleged sexual advances or abuse; and (4) the school corporation had the opportunity, but failed, to take reasonable, prompt, and effective remedial or preventative measures. Instruction No. 11.[2] As such, the jury would hear evidence regarding whether Fields' seduction was welcomed by Diane. This error is manifested, according to plaintiff, in Instruction No. 13, which reads:

> In order to find in favor of the Plaintiff, you must find first that the alleged sexual advances and/or abuses occurred, and if it did, that the advances and/or abuse were unwelcome by her. Conduct is unwelcome if Diane M. did not solicit or incite it, and if she regarded the conduct as undesirable or offensive. In determining whether the conduct was unwelcome, you should consider such things as Diane M.'s receptiveness to the alleged sexual advances and/or abuse in light of her words, acts and demeanor; her emotional predisposition, if any; the age disparity between her and Andrew Fields; any power disparity between them due to Diane M.'s status as a student and Andrew Fields' status as a school employee.

Plaintiff also alleges on appeal that the district court erred in not granting her motion for a new trial. Because we find that the instruction regarding welcomeness so

tainted the trial, we reverse and remand for a new trial.

## ANALYSIS

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, prohibits sexual discrimination in educational programs and activities which receive federal funds. Specifically, Title IX provides, in pertinent part, that "[n]o person ... shall, on the basis of sex, be denied the benefits of, or be subjected to any discrimination under any education program ... receiving Federal financial assistance." 20 U.S.C. § 1681(a). The United States Supreme Court provided for a private right of action against an educational institution under Title IX in *Cannon v. University of Chicago*, 441 U.S. 677, 694–96, 99 S.Ct. 1946, 1956–58, 60 L.Ed.2d 560 (1979), and granted private litigants the right to recover compensatory damages for a Title IX violation in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75–77, 112 S.Ct. 1028, 1037–39, 117 L.Ed.2d 208 (1992).

■ We note at the outset that unlike this Court's recent decision in *Smith v. Metro. Sch. Dist. Perry Township*, 128 F.3d 1014 (7th Cir.1997), this case does not present a problem concerning the appropriate defendant to a Title IX action. In *Smith*, issued two days after oral arguments were heard in this case, a divided panel held that "a school district is liable for teacher-student sexual harassment 'only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so.'" 128 F.3d at 1034 (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir.1997)). This Court found that the school district was not liable for the sexual harassment[3] by one of its teachers because there was no evidence that a school official knew of the alleged harassment and failed to respond. *Id.*

---

**2.** The parties stipulated that NLCSC is an educational institution that receives federal funds.

**3.** The *Smith* Court also found that sexual harassment of a student constitutes discrimination "on the basis of sex" for purposes of Title IX. *Smith,* 128 F.3d at 1021.

Here, in contrast, there is sufficient evidence that a school official knew of the sexual harassment by one of its employees and failed to respond. Principal Pounds knew that Diane and Fields were planning to skip school/work the day before they actually did. He was informed by two people the day before and failed to act on that information. While Pounds claimed not to have believed one of the sources, he said nothing as to whether he believed the second source. And when the second source informed Pounds that Diane was going to skip school with the "french frier," Pounds replied that he was already aware of this. Pounds alerted his secretaries to be on the lookout for Diane's name on the absentee list, indicating that he at least suspected that the "rumors" he heard were true.[4] Additionally, Pounds was informed that Diane and Fields were on a date the night of the school dance. This is sufficient evidence to prove that Pounds, a school official, knew of the harassment in question.[5] He had the power as a school principal to take action, and failed to do so. With the proper defendant in front of us, we turn to address appellant's contentions.

■ Appellant's primary argument centers around the district court's decision to allow the issue of welcomeness to be presented to the jury. Plaintiff argues that Judge Barker's pre-trial ruling allowing welcomeness to be before the jury is wrong in that a thirteen year old cannot welcome the sexual advances of a twenty-one year old. Accordingly, plaintiff objected to Instruction No. 13, which, *inter alia*, placed welcomeness before the jury.

■ Our review of jury instructions is limited. *Wilson v. Williams*, 83 F.3d 870, 874 (7th Cir.1996). We review the district court's actions for an abuse of discretion. *American Nat'l Bank & Trust Co. v. Regional Transp. Auth.*, 125 F.3d 420, 431 (7th Cir.1997). We will order a new trial only if it appears that "the jury was misled and its understanding of the issues was seriously compromised, to the prejudice of the losing party." *Tyus v. Urban Search Management*, 102 F.3d 256, 264 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2409, 138 L.Ed.2d 175 (1997). Our analysis, then, is in two parts. First we must determine if the instruction misstates or insufficiently states the law; if so, we must then determine whether the error has prejudiced the complaining party. *Wilson*, 83 F.3d at 874.

■ We believe that the trial judge's welcomeness instructions were given in error. Welcomeness is an improper inquiry to be made in Title IX cases involving sexual discrimination of elementary school children.[6] No court has yet addressed the issue of whether an elementary school child can welcome sexual advances, and cases cited by appellee are inapposite. In fact, at least one of the three cases cited by appellee leads to an opposite conclusion.

Appellee cites *Does v. Covington County Sch. Bd. of Educ.* as an example of a case where the court required an elementary school child to prove the sexual abuse was unwelcome. *Does v. Covington County Sch. Bd. of Educ. (Does I)*, 930 F.Supp. 554

---

4. The fact that Pounds did not believe these sources did not excuse him from further investigation. Under federal law, all education programs receiving federal financial assistance must designate at least one "responsible employee" to investigate complaints of sexual harassment and must "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints" of harassment. 34 CFR § 106.8(a)(b). At the very least Pounds should have contacted the school's designated "responsible employee," assuming Bedford Junior High had one and was in compliance with these regulations.

5. That Fields was an employee of Bedford Junior High School and not a teacher is immaterial for purposes of Title IX. Title IX prohibits discrimi-

nation "on the basis of sex" under "any education program or activity receiving Federal financial assistance" and does not specify who must be doing the discriminating. 20 U.S.C. § 1681.

6. Judge Barker incorrectly stated throughout the trial and in her bench rulings that Diane M. was not an elementary school student. Indiana Administrative Code provides that "elementary school means any combination of grades kindergarten (K) through eight (8)." 511 IAC 6–1–1. As an eighth grader, Diane M. was an elementary school student at the time of the events in question. We decline to opine, however, on whether secondary school students can welcome sexual advances in harassment claims arising under Title IX.

(M.D.Ala.1996). However, in *Does I* the court expressed no opinion as to whether the harassment at issue was unwelcome. Rather, the court reserved its ruling on defendant's motion for summary judgment until the plaintiffs submitted a brief offering more specific evidence of, *inter alia,* welcomeness. *Id.* at 569–70. After the briefing was completed, the court granted defendant's motion for summary judgment against two of the four plaintiffs and specifically held that "[w]hen dealing with the sexual abuse of elementary students, it may be presumed that the abuse is unwelcome." *Does v. Covington County Sch. Board (Does II),* 969 F.Supp. 1264, 1277 (M.D.Ala.1997). If anything, *Does II* counsels in favor of appellant's argument that an elementary student cannot welcome sexual harassment.

Appellee's reliance on *Davis v. Monroe County Bd. of Educ.,* 74 F.3d 1186 (11th Cir.1996), *rev'd,* 120 F.3d 1390 (11th Cir. 1997) (en banc), is similarly misplaced. *Davis* expressed no opinion as to whether elementary students must prove unwelcomeness, but rather found that an educational institution can be held liable under Title IX for student-student sexual harassment.[7] *Id.* at 1193. The *Davis* opinion was later reversed by an en banc Eleventh Circuit, which held that it would not recognize a claim for student-student sexual discrimination under Title IX. *See Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390, 1406 (11th Cir.1997) (en banc). Finally, appellee's reliance on *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), is erroneous. *Meritor* dealt with sexual harassment in the context of Title VII employment discrimination and said nothing as

to whether an elementary school child must prove that the complained-of sexual abuse was unwelcome.

While welcomeness is properly a question of fact in the context of Title VII employment discrimination cases, *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405–06, we decline to extend the inquiry to Title IX cases when elementary students are involved. It goes without saying that sexual harassment in the workplace is vastly different from sexual harassment in a school setting.

> The ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace, as students look to their teachers for guidance as well as for protection. The damage caused by sexual harassment also is arguably greater in the classroom than in the workplace, because the harassment has a greater and longer lasting impact on its younger victims, and institutionalizes sexual harassment as accepted behavior. Moreover, as economically difficult as it may be for adults to leave a hostile workplace, it is virtually impossible for children to leave their assigned school. Finally, a nondiscriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that a student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing her full intellectual potential and receiving the most from the academic program.

*Davis,* 74 F.3d at 1193 (11th Cir.1996) (citation omitted), *rev'd,* 120 F.3d 1390 (1997). Schools are charged with acting *in loco parentis,* while employers owe no such duty to

---

**7.** Courts recognize at least two types of sexual harassment. The first, called "quid pro quo" harassment, occurs when the receipt of benefits or the maintenance of the status quo is conditioned on acquiescence to sexual advances. *Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 467 (8th Cir.1996). The second, called "hostile environment" harassment, occurs when unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct have the purpose or effect of unreasonably interfering with an individual's performance or creating an intimidating, hostile, or offensive environment. *Id.* Some district courts also recognize a third type of sexual harassment for Title IX purposes, called

"student-student" or "peer-to-peer" harassment, which occurs when students are subjected to a sexually hostile educational environment created by a fellow student or students when the supervising authorities knowingly fail to act to eliminate the harassment. *See, e.g., Bruneau By and Through Schofield v. South Kortright Cent. Sch. Dist.,* 935 F.Supp. 162, 172 (N.D.N.Y.1996); *Burrow v. Postville Community Sch. Dist.,* 929 F.Supp. 1193, 1205 (N.D.Iowa 1996). Plaintiff in this case bases her claims on a hostile environment theory of discrimination. We therefore have no occasion to rule on whether this Circuit will recognize a claim for peer-to-peer sexual harassment.

their employees. Further, employees are older and (presumably) know how to say no to unwelcome advances, while children may not even understand that they are being harassed. Thus, given the difference between the two environments, we refuse appellee's directive to apply welcomeness as it has been interpreted in the Title VII context to Title IX cases. *See Smith*, 128 F.3d 1014 (refusing to apply Title VII agency principles to Title IX when determining whether a school can be held accountable for a teacher's sexual harassment of a student); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir.1988) (limiting application of Title VII principles to only those Title IX cases involving employment discrimination).

With no case on point, we look to other sources of law for clarification. In criminal law, elementary school children cannot consent to sex. The Indiana criminal code in effect at the time of the events in question provided that a person under the age of sixteen cannot consent to sexual intercourse. *See* Ind.Code 35–42–4–3(c). Similarly, this Court in an en banc decision held that a thirteen year old cannot be said to appreciate the full risk and consequences of sexual intercourse, and that the statutory rape of a thirteen year old is so serious a crime as to amount to an act of violence for sentencing purposes. *See United States v. Shannon*, 110 F.3d 382, 388–89 (7th Cir.) (en banc) (statutory rape of a thirteen year old is a crime of violence under U.S.S.G. § 4B1.2(1)), *cert. denied*, —— U.S. ——, 118 S.Ct. 223, —— L.Ed.2d —— (1997). If elementary school children cannot be said to consent to sex in a criminal context, they similarly cannot be said to welcome it in a civil context. To find otherwise *would be incongruous.*

An opposite holding would defeat the purposes of Title IX and make children claiming sexual discrimination under Title IX subject to intense scrutiny. Title IX was created to avoid the use of federal resources to support discriminatory practices and to provide individual citizens effective protection against discriminatory actions. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). If welcomeness were properly an issue for the jury to consider in cases involving elementary students, the very children bringing the suits would be subject to intense scrutiny regarding their responses to their alleged abusers. Trial transcripts would be replete with insinuations that a child dressed or acted in such a manner as to ask for the very conduct she or he is seeking to redress. In this case, the record demonstrates as much; every witness called by the plaintiff was subject to questions regarding Diane's reaction to each and every one of Fields' advances. Diane did not sue the school claiming she was raped; she does not contest the consensual nature of her relationship with Fields. Therefore, the questioning regarding her consent to Fields serves only to prejudice her. According to NLCSC at oral argument, a five year old clad in a sexy dress would have a difficult time proving she did not welcome sexual discrimination. We find such a suggestion untenable, and refuse to transfer the onus to the child to prove that in fact she or he did not welcome the complained-of advances. We decline to allow the inference that an elementary student is presumed to have not consented to molestation by a twenty-one year old in a criminal case, but welcomed the same conduct in a civil case.

 Having found that Instruction No. 13 is an incorrect statement of the law,[8] we must next address whether Diane has been prejudiced by the erroneous instruction. We find that she has. As we stated above, Diane does not contest that her relationship with Fields was consensual. Therefore, any reference to the fact that she did not object to Fields' advances makes her claim of discrimination appear frivolous. With welcomeness before the jury, the defense is allowed to present the argument that this girl is suing to recover for conduct she herself enjoyed. Such an argument has no place in the trial of

---

8. We note that Instruction No. 11 is also an incorrect statement of the law, as this Court in *Smith* declined to adopt a negligence standard of liability for imputing knowledge to an educational institution. See *Smith*, 128 F.3d 1014. There-fore element three of Judge Barker's instruction, requiring that the school corporation knew or should have known of the alleged sexual advances or abuse, is erroneous.

a school district charged with discriminating against a thirteen year old child. That Diane consented to sex with Fields does not mean she understood the risks associated with her actions. A thirteen year old girl cannot be said to understand the nature of her actions when she engages in sexual intercourse. *See Shannon,* 110 F.3d at 389.

Evidence that Diane did not reject Fields sufficiently misled the jury and resulted in an inconsistent verdict. While we will not venture to guess why or how the jury could have found for Diane on the issue of liability and proceeded to award her nothing in compensatory or punitive damages, we find that the instruction regarding welcomeness is so intertwined with the issue of damages as to severely prejudice her. The only way to determine whether the jury believed the welcomeness instruction prohibited it from awarding monetary relief, or whether it believed Diane suffered no damages, is to remand this case for a new trial with the instruction that welcomeness is not at issue.

■ On remand, the district court should instruct the jury that in order to state a claim for hostile environment sexual harassment under Title IX, the plaintiff must prove that: (1) plaintiff belongs to a protected group; (2) plaintiff was subjected to harassment; (3) the harassment was based on sex;(4) the harassment was so pervasive or severe that it altered the conditions of plaintiff's education; and (5) knowledge by school officials. *See e.g., Smith,* 128 F.3d 1014; *Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 467–68 (8th Cir.1996); *Seamons v. Snow,* 84 F.3d 1226, 1232 (10th Cir.1996); *Does II,* 969 F.Supp. at 1282.

Because we find that the instruction was erroneous and a new trial is required, we need not address appellant's argument for a new trial.

### CONCLUSION

The jury instructions as given by the district court were incorrect statements of the law. A thirteen year old child cannot welcome the sexual advances of a twenty-one year old man. Accordingly, we REVERSE the jury's finding and remand this case for a new trial consistent with this opinion.