Rita HARPER, et al., Plaintiffs,

v.

BOARD OF REGENTS, ILLINOIS STATE UNIVERSITY, et al., Defendants.

No. 95–1371.

United States District Court, C.D. Illinois.

Feb. 3, 1999.

Raymond C. Rose, Kanoski Rose & Assoc., Peoria, IL, Daniel V. Kinsella, David M. Rownd, Burditt & Radzius, Chicago, IL, Robert H. Smith, Michael A. Code, Vito Mark Masciopinto, Michael E. Sweeney, Lowis & Gellen, Chicago, IL, Louis S. Goldstein, Cindy G. Fluxgold, Bruce S. Kreisman, Max Griffin, Donald W. Anderson, Goldstein Fluxgold Plaza & McConnell, Ltd, Chicago, IL, Charles D. Vogel, Bloomington, IL, for Rita Harper, Chris Boulahanis, Edward C. Vanduyne, Jamie R. Burton, Bryan S. Simkins, Gregory J. Hall, Kevin Bracken, Gerald Delira, Jr., Jeffrey L. Castor, Jr., Michael F. Brux, Michael B. Lucier, Roger Pascual, Mark Hibner, Kerrie Ann Bracken, Shannon J. Duffy, Patrick R. Manning, Matt Webster, Justin Stone, Kevin Haynes, plaintiffs.

Carol J. Hansen Posegate, Gregory K. Harris, Thomas Schanzle–Haskins, Giffin Winning Cohen & Bodewes PC, Springfield, IL, for Board of Regents, Illinois State University, Thomas Wallace, Rick Greenspan, Linda Herman, Donna Taylor, David. Strand, Does I—XX, sued as Does 1 through 20 inclusive, Jill Hutchison, defendants.

### *ORDER*

McDADE, Chief Judge.

Now before the Court is Defendants' Motion for Summary Judgment on the remaining counts of Plaintiffs' Complaint. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs bring claims under Title IX, Title VI, and the First Amendment.

### Background

In 1993, Illinois State University's ("ISU" or the "Univeristy") Gender Equity Committee (the "Committee") undertook an investigation and evaluation of athletic data relevant to gender equity and Title IX compliance with the stated purpose of achieving gender equity for the areas examined. The Committee's efforts ultimately resulted in the issuance of the Gender Equity Committee Report (the "Report") in Fall 1993 that noted a disparity between the percentage of female students in the undergraduate population at the University and the percentage of female participants in the intercollegiate athletics programs offered. The Athletic Department was to review the Report and incorporate it in the long range planning process for the University. In January 1995,

the NCAA Peer–Review Committee conducted an audit of ISU and determined that the University was not in substantial conformity regarding gender equity as it had no written plan to achieve gender equity in place two years after the completion of the Report.

After consideration of various alternatives, ISU's Department of Intercollegiate Athletics submitted a gender equity plan to the University president and legal counsel in 1995 that included a recommendation to eliminate men's wrestling and soccer, as well as add women's soccer, men's roster management, and full grants/aid for both men and women. This recommendation was submitted to the Athletic Council on March 22, 1995 and April 26, 1995, and the recommendation received its support.

This process culminated in the official decision in Spring 1995 to eliminate the men's intercollegiate soccer and wrestling programs and add a women's intercollegiate soccer program.[1] The parties dispute who actually made this decision, but they agree that Linda Herman ("Herman"), ISU's Associate Athletic Director, was actively involved in the decision-making process and that the University president, Thomas Wallace, officially adopted the plan in a memorandum dated April 27, 1995. Accordingly, the men's wrestling and soccer teams were eliminated as intercollegiate sports after the 1994–95 season, and women's soccer was elevated to a varsity level sport for the 1995–96 season.

Plaintiffs are present, former, and prospective students and participants in intercollegiate athletic programs at ISU, some of whom were promised full or partial scholarships in either men's wrestling or soccer. On September 22, 1995, they filed an eleven count complaint in this Court. The complaint was amended once on November 13, 1995 and again on May 24, 1996. Following a motion to dismiss, only four counts remain. Count I alleges that Defendants discriminated on the basis of sex in eliminating the men's wrestling and soccer programs in violation of Title IX.[2] In Count IV, Plaintiffs assert a violation of Title VI based on the purported denial of opportunities for minority students to participate in intercollegiate athletic programs on the basis of race. Count IX purports to invoke the supplemental jurisdiction of the Court to entertain state law claims for promissory estoppel and fraudulent inducement. Finally, Count X alleges that Defendant Jill Hutchison ("Hutchison"), ISU's women's basketball coach, infringed the First Amendment rights of two Plaintiffs. Defendants have moved for summary judgment on the remaining counts of the Second Amended Complaint. This Order follows.

### Legal Standard

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus.Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.,* 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because

---

1. These intercollegiate programs receive federal financial assistance, which brings them under the umbrella of Title IX.

2. A limited class was certified with respect to this count.

they may be reasonably resolved in favor of either party. *Anderson,* 106 S.Ct. at 2511.

## Discussion

### I. *Title IX Claim*

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in educational programs and activities which receive federal funding. *Mary M. v. North Lawrence Community School Corp.,* 131 F.3d 1220, 1224 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2369, 141 L.Ed.2d 737 (1998). Specifically, the relevant portion of Title IX provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ....

20 U.S.C. § 1681(a).

In 1975, the Secretary of the Department of Health, Education, and Welfare ("HEW") published regulations implementing the provisions of Title IX with respect to intercollegiate athletic activities. *Kelley v. Board of Trustees,* 35 F.3d 265, 268 (7th Cir.1994); 34 C.F.R. § 106.41(b). In doing so, the school must "provide equal athletic opportunity for ... both sexes." 34 C.F.R. § 106.41(c).

■ Equal athletic opportunity is to be evaluated according to a list of ten factors: (1) Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of both sexes; (2) The provision of equipment and supplies; (3) Scheduling of games and practice times; (4) Travel and per diem allowance; (5) Opportunity to receive coaching and academic tutoring; (6) Assignment and compensation of coaches and tutors; (7) Provision of locker rooms, practice and competitive facilities; (8) Provision of medical and training facilities and services; (9) Provision of housing and dining facilities and services; and (10) Publicity. *Id.* However, "an institution may violate Title IX solely by failing to accommodate effectively the interests and abilities of student athletes of both sexes." *Kelley,* 35 F.3d at 268. A HEW policy interpretation issued in 1979 provides three benchmarks to determine when an institution has effectively accommo-

dated the interests of both male and female students:

(1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or (2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or (3) Where members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion..., whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Fed.Reg. 71,418 (1979).

■ Here, Defendants assert that their action was taken after studies revealed a significant disparity between the percentage of female students and the athletic opportunities available for them on the one hand and the percentage of male students and the athletic opportunities available for them on the other hand. ISU was therefore attempting to pursue the proportionality benchmark for Title IX compliance described in the HEW policy interpretation.

Plaintiffs contend that because the participants in the men's soccer and wrestling programs were indisputably male, and the programs were purposefully selected for elimination in order to increase the proportion of athletic opportunities available to women at the expense of men, ISU's decision violated Title IX on its face. They criticize the proportionality approach taken by the University as based solely on a desire to act cheaply and with ease, "of dubious legality", and not the least discriminatory alternative available. Plaintiffs further argue that general enrollment statistics tell nothing about the proportions of male and female students who are interested in and qualified for participation in intercollegiate athletics.

Plaintiffs argument that the substantial proportionality benchmark is invalid and of dubious legality on its face is without merit. Courts in this and other circuits have expressly and repeatedly upheld the reasonable application of this mechanism in similar situations as completely consistent with the dictates of Title IX. *See Kelley,* 35 F.3d at 270–72; *Cohen v. Brown University,* 991 F.2d 888, 898 (1st Cir.1993). In fact, the court in *Cohen* went so far as to sanction the reduction of athletic opportunities to the overrepresented sex through subtraction or downgrading as an appropriate means of complying with the first benchmark. *Id.,* at 898 n. 15; *see also, Roberts v. Colorado State Board of Agriculture,* 998 F.2d 824, 830 (10th Cir.1993) (finding that "in times of economic hardship, few schools will be able to satisfy Title IX's effective accommodation requirements by continuing to expand their women's athletic programs ... [but] may still comply with Title IX by cutting athletic programs such that men's and women's athletic participation rates become substantially proportionate to their representation in the undergraduate population.")

Although Plaintiffs would have the Court believe that ISU had no reason to suspect that it was not in compliance with Title IX, the Court is aware of no basis in the law requiring an institution to wait until it is either sued or formally investigated to make efforts to come into compliance; to the contrary, self-policing is readily encouraged by the implementing regulations. Furthermore, this assertion is belied by the record as Defendants assert, and Plaintiffs concede, that the NCAA peer-review team informed them that the University was not in substantial conformity regarding gender equity. While some investigation was obviously done prior to making the formally announced decision and some individuals involved in the process may have expressed opinions on the issue, there is no credible evidence suggesting that the ultimate decision was not made in an effort to achieve a more equitable gender balance in athletic opportunities, and the Court will not impute sinister motives simply because Plaintiffs are unsatisfied with the results of these efforts.

Faced with figures demonstrating a substantial overrepresentation among male students in funded athletic programs, ISU determined that it would have to cut a small number of men's intercollegiate programs in order to increase the athletic opportunities available to female students. This determination was based on the fact that men's participation in athletics was more than substantially proportionate to their enrollment at ISU, but women's participation did not even come close. Additionally, although ISU sponsored several women's sports at the intercollegiate level, the record demonstrates that little had been done in recent history to improve or increase opportunities for women athletes to participate in funded programs.

■ Much of Plaintiffs' argument goes to the assertion that the chosen method for achieving or increasing compliance was not the least discriminatory method available to the University. However, they can identify nothing in Title IX that requires the institution to choose the method or benchmark for achieving gender parity that has the least negative impact on the overrepresented gender or provides the most convenient solution for men. Rather, the regulations allow institutions to choose among the three benchmarks to bring themselves into compliance. Similarly, their suggestion that the provision of proportional athletic opportunities was unnecessary because female students were not as interested or qualified in athletics as male students has been rejected by other courts as without merit. *See Cohen,* 991 F.2d at 899.

> Under Title IX, the University could cut men's programs without violating the statute because men's interests and abilities are presumptively met when substantial proportionality exists. Conversely, women's programs could not be cut because their level of participation was already disproportionate to their respective enrollment, and thus the University would be vulnerable to a finding of non-compliance with Title IX if the University failed to "fully and effectively accommodate [women's] interests and abilities."

*Kelley v. Board of Trustees of University of Illinois,* 832 F.Supp. 237, 242 (C.D.Ill.1993). In other words, the members of the men's wrestling and soccer teams have not been discriminated against in violation of Title IX,

because "[e]ven though elimination of their program excluded them from varsity participation as individuals, the percentage of all men participating in the varsity program is more than 'substantially proportionate' to the percentage of men represented by the undergraduate population." *Id., citing Cohen,* 991 F.2d at 906; *Roberts v. Colorado State,* 998 F.2d 824 (10th Cir.1993); *Cook v. Colgate University,* 992 F.2d 17 (2nd Cir.1993); *Favia v. Indiana University of Pennsylvania,* 812 F.Supp. 578 (W.D.Pa.1993). Although Plaintiffs' desire to complete their college education and intercollegiate wrestling and soccer at ISU, the school of their choice, is understandable, Title IX does not establish a right to participate in any particular sport at the college of one's choice. *In re United States ex rel. Missouri State High School Activities Assn.,* 682 F.2d 147, 153 n. 8 (8th Cir.1982); *Walsh v. Louisiana High School Athletic Assn.,* 616 F.2d 152, 159–60 (5th Cir.1980); *Colorado Seminary v. NCAA,* 570 F.2d 320, 321 (10th Cir.1978).

Plaintiffs make a good showing that ISU handled this decision very poorly and may not have made the best decision theoretically possible, but that is not what is at issue in Count I and is not enough to survive summary judgment. Title IX prohibits gender discrimination by educational institutions, not mere lapses of professional courtesy, consideration, or good judgment, and Plaintiffs have utterly failed to demonstrate that ISU considered gender in any way except for the express purpose of acting to comply or come into compliance with federal law. On the record before the Court, a reasonable jury would have no basis for finding any motive other than that the University's actions were taken in an attempt to comply with Title IX that was in accordance with the benchmark for measuring compliance set forth in the agency's policy interpretation.[3] *Kelley,* 35 F.3d at 272.

Although Plaintiffs argue that there are many issues of fact, the Court finds none of the identified factual disputes to be material to the resolution of this Title IX claim. While the Court is not unsympathetic to the hardship incurred by the members of the men's wrestling and soccer teams or their disappointment in not being able to pursue the sport of their choice at their chosen institution, Plaintiffs' Title IX claim fails, and Defendants are entitled to judgment as a matter of law with respect to Count I.

## II. *Title VI Claim*

Title VI of the Civil Rights Act of 1964 provides in relevant part:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d; *Ahern v. Board of Education of the City of Chicago,* 133 F.3d 975, 976 (7th Cir.1998). As ISU is a recipient of federal funds, it must comply with Title VI. *Id.*

Plaintiffs, as confirmed in their responsive pleadings, do not contend that there is any evidence of intentional racial discrimination in the elimination of the men's wrestling and soccer programs. Rather, they argue that the claim asserted is based on disparate impact on minority athletes. Both the United States Supreme Court and the Seventh Circuit Court of Appeals have recognized the availability of a limited cause of action for disparate impact in holding that "actions having an unjustifiable disparate impact on minorities [may] be redressed through agency regulations designed to implement the purposes of Title VI." *City of Chicago v. Lindley,* 66 F.3d 819, 828 (7th Cir.1995), *citing Alexander v. Choate,* 469 U.S. 287, 293 n. 9, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Implementing regulations further provide that recipient institutions "may not directly ... utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin." 34 C.F.R. § 100.3(b)(2); 45 C.F.R. § 80.3(b)(2).

---

**3.** There can be no reasonable dispute that after the elimination of men's wrestling and soccer and the addition of women's soccer, the proportion of athletic opportunities available to each gender more closely approximated the respective proportions of male and female students at ISU.

■ In order to state a claim for racial discrimination as a result of a disparate impact, Plaintiffs must demonstrate that a facially neutral practice has a racially disproportionate impact. *Georgia State Conference of Branches of NAACP v. Georgia,* 775 F.2d 1403, 1417 (11th Cir.1985). Upon this showing, the burden then shifts to Defendants to prove substantial and legitimate justification for the practice. *Id.* If Defendants meet this burden, Plaintiffs must proffer an equally effective alternative practice which results in less disparate impact in order to prevail. *Id.*

■ Defendants contend that Plaintiff has failed to show a disparate impact on minority athletes with respect to the elimination of the men's wrestling and soccer programs. Not surprisingly, Plaintiffs contend that this showing has been made.

Initially, the Court notes that the figures presented by both sides differ somewhat. Although both sides agree that ISU's decision resulted in a reduction in minority participation from just under 28% (27.8%) to 27% in all sports, Plaintiff suggests that the true indicator of the impact is the decline from 17% to 14.6% in nonrevenue sports. Defendant argues, and the Court concurs, that there is no principled reason for focusing solely on the non-revenue sports when the inquiry is whether the decision to eliminate two intercollegiate programs had a disparate impact on minority athletic participation opportunities as a whole at ISU. Indeed, the only apparent motive for drawing this distinction would appear to be to superficially inflate a change of less than 1% (.8% to be precise) into a 2.4% reduction in minority opportunities for participation.[4]

Plaintiffs attempted contortions do not change the fact that 35 male athletes who were not minorities also lost their team positions, or that the elimination of the two intercollegiate teams resulted in only an .8%

change in minority participation opportunities in ISU athletics. Thus, the impact on minorities demonstrated by Plaintiffs is not disproportionately negative, and the evidence in support of this claim is therefore insufficient to survive summary judgment.

■ However, even assuming that Plaintiffs have presented statistical evidence of a disparate impact, Defendants have asserted a legitimate non-discriminatory reason for the decision, that being the need to come into compliance with the requirements of Title IX. After making the cursory (and previously rejected) comment that this reason is insubstantial, Plaintiffs then argue that Defendants had alternatives that had less of a discriminatory impact on minorities, as well as men. But alas, Plaintiffs burden is to demonstrate *equally effective* alternatives that result in less disparate impact. *Georgia State,* 775 F.2d at 1417 (emphasis added). The bald assertion that alternatives posing a lesser impact on minorities were available does not even come close to establishing that these alternatives were equally effective in addressing the disparity in athletic opportunities available to female students.[5] As Plaintiffs have utterly failed to meet their burden on rebuttal, no reasonable jury could find in their favor on the Title IV claim, and Defendants are entitled to judgment as a matter of law on Count IV as well.

### III. *First Amendment Claim*

Count X of the Second Amended Complaint purported to state a cause of action for violation of the First Amendment rights of two plaintiffs. Plaintiffs do not contest the entry of summary judgment on this count, and therefore, the Court finds that Defendants are entitled to judgment as a matter of law with respect to Count X.

---

4. The category of non-revenue sports apparently includes all intercollegiate sports except football and basketball. As football and basketball account for 56 of the 100 minority students participating in intercollegiate athletics at ISU during the 1994–95 school year, the exclusion of these sports from consideration effectively excludes more than 50% of minority opportunities for athletic participation from the analysis, revealing the arbitrariness and flawed nature of Plaintiffs' categorization efforts.

5. In fact, Defendants' reply brief reveals that the alternatives suggested by Plaintiffs would not have brought the University into substantial compliance with Title IX under the first benchmark and would have caused the University to incur significant additional costs.

## IV. *State Law Claims*

Count IX asserts individual state law claims for promissory estoppel and fraudulent inducement on behalf of Plaintiffs who were recruited into either the men's wrestling or soccer team with the alleged promise that each would either receive or be eligible to receive a scholarship in the future. The precise issues and relevant facts involved are not made clear by either party, and there is an allusion to incomplete discovery with respect to these claims.

 Title 28 U.S.C. § 1367 provides that a district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it has jurisdiction. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1250 (7th Cir.1994), *citing* 28 U.S.C. § 1367(c)(3). A district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. *Id.* at 1251, *citing Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). Finally, as a general rule, when all federal claims are dismissed, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Wright*, 29 F.3d at 1250, *citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Previously in this Order, the Court determined that Defendant's motion for summary judgment on Plaintiffs' federal Title IX, Title VI, and First Amendment claims should be granted. As no federal claims remain, there can be no question that the remaining state claims predominate. Additionally, whether an Illinois court would find Plaintiffs' allegations sufficient to state a claim for either promissory estoppel or fraudulent inducement is not readily apparent from the pleadings. After weighing the relevant factors of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Accordingly, the Court will dismiss the claims in Count IX without prejudice to their being refiled in state court.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 122] is **GRANTED** in part and **DENIED** in part. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiffs on Counts I, IV, and X of Plaintiff's Second Amended Complaint. IT IS FURTHER ORDERED that Count IX of Plaintiff's Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. This case is now **TERMINATED**.