Chris BOULAHANIS, Edward C. Vanduyne, Jamie R. Burton, et al., Plaintiffs–Appellants,

v.

BOARD OF REGENTS, a body politic and corporate, Illinois State University, Thomas Wallace, et al., Defendants–Appellees.

No. 99–1561.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1999.

Decided Dec. 3, 1999.

Donald W. Anderson (argued), Burditt & Radzius, Louis S. Goldstein, Goldstein & Fluxgold, Chicago, IL, for plaintiffs-appellants.

Tom Schanzle-Haskins (argued), Giffin, Winning, Cohen & Bodewes, Springfield, IL, for defendants-appellees.

Daniel V. Kinsella, Rooks, Pitts & Poust, Chicago, IL, for amicus curiae.

Before WOOD, JR., FLAUM, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiffs-appellants, a group of former and prospective athletes at Illinois State University (the "University"), appeal the district court's grant of summary judg-

ment to the University, alleging that the actions of the University in eliminating its men's wrestling and men's soccer programs constitute a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. In addition, the plaintiffs-appellants appeal the district court's dismissal of various claims of sex discrimination and race discrimination under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) arising out of the same University actions, arguing that the district court incorrectly deemed those claims to be preempted. For the reasons set out below, we agree with the judgment of the district court and affirm.

## I. Facts

In the fall of 1993, the Gender Equity Committee of Illinois State University undertook a year-long investigation of gender equity and Title IX compliance at the University. The results of this study indicated that enrollment at the University was 45% male and 55% female, while athletic participation was 66% male and 34% female. The study concluded that these numbers did not constitute equitable participation opportunities for women. In response to this conclusion, the University began to consider ways to bring itself into compliance with Title IX.

■■ Under Title IX, Illinois State University is required to "provide equal athletic opportunity" for men and women. 34 C.F.R. § 106.41(c). Equal opportunities are to be evaluated according to the following ten factors:

(1) Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes; (2) The provision of equipment and supplies; (3) Scheduling of games and practice time; (4) Travel and per diem allowance; (5) Opportunity to receive coaching and academic tutoring; (6) Assignment and compensation of coaches and tutors; (7) Provision of locker rooms, practice and competitive facilities; (8) Provision of

medical and training facilities and services; (9) Provision of housing and dining facilities and services; and (10) Publicity.

*Id.* In addition to these considerations, an "institution may violate Title IX solely by failing to accommodate the interests and abilities of student athletes of both sexes." *Kelley v. Board of Trustees*, 35 F.3d 265, 268 (7th Cir.1994) (citing *Roberts v. Colorado St. Bd. of Agric.*, 998 F.2d 824, 828 (10th Cir.1993); *Cohen v. Brown Univ.*, 991 F.2d 888, 897–98 (1st Cir.1993)).

In order to effectively accommodate the athletic interests of both male and female students, the University had three options under the policy interpretations of Title IX promulgated by the Office of Civil Rights: (1) provide participation opportunities for men and women that are substantially proportionate to their respective rates of enrollment as full-time undergraduate students; or (2) demonstrate a history and continuing practice of program expansion for the under-represented sex; or (3) fully and effectively accommodate the interests and abilities of the under-represented sex. 44 Fed.Reg. 71,418 (1979). Because the University had not added a women's sports program in over ten years, and because it did not believe it could accommodate effectively the interests and abilities of its women students, the University focused on achieving the goal of substantial proportionality. The University's desire to bring itself into compliance with Title IX through a showing of substantial proportionality was intensified by a 1995 audit by the National Collegiate Athletic Association. The results of that audit showed that the University was not in conformity with the requirements of Title IX.

The University considered ten options to achieve compliance with Title IX. These options included: (1) dropping men's wrestling; (2) dropping men's wrestling and men's soccer; (3) dropping men's wrestling, men's soccer, and men's tennis; (4) dropping men's wrestling and adding wom-

en's soccer; (5) dropping men's wrestling and men's soccer and adding women's soccer; (6) dropping men's wrestling, men's soccer, and men's tennis and adding women's soccer; (7) adding women's soccer; (8) adding women's soccer and bringing women to full funding; (9) dropping men's wrestling and men's soccer, adding women's soccer, and adjusting men's rosters and women's grants in aid; and (10) dropping men's wrestling and men's soccer, adding women's soccer, and adjusting men's rosters and grants in aid for both men and women. After careful consideration of these options, the University ultimately chose and implemented option number ten. This resulted in the addition of women's soccer and the elimination of men's soccer and men's wrestling. The implementation of this plan increased the athletic participation of women to 51.72% and decreased the athletic participation of men to 48.29%, thereby bringing the disparity between enrollment and participation to within three percentage points.

The plaintiffs-appellants are former members of the men's soccer and men's wrestling teams at Illinois State University who, as a consequence of the University's elimination of those programs under its gender equity plan, were no longer able to participate in those sports at the University. They contend that the University's decision to eliminate the programs in which they participated was based on sex, and is therefore a violation of Title IX. They also allege various violations of their constitutional rights under both § 1983 and § 1985(3). The district court granted the University summary judgment on the Title IX claim, and dismissed the constitutional claims as preempted by the availability of a Title IX claim. It is from these decisions that the plaintiffs-appellants now appeal.

## II. Analysis

■ We review the district court's grant of summary judgment to Illinois State University *de novo*. *See Johnson v. Zema*

*Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). In order to overcome summary judgment, the plaintiffs-appellants must show specific facts sufficient to raise a genuine issue for trial. Fed.R.Civ.P. 56(c); *see Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 477 (7th Cir.1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In determining whether a genuine issue of material fact exists, we must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Senner v. Northcentral Technical College*, 113 F.3d 750, 754 (7th Cir.1997). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994).

### A.

■ Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The plaintiffs-appellants contend that the University's actions in eliminating the men's soccer and men's wrestling programs were based solely on the sex of the participants. According to the plaintiffs-appellants, because these discriminatory actions would not have been taken "but for" the sex of the participants, the actions violate Title IX on its face. *See International Union v. Johnson Controls, Inc.*, 499 U.S. 187, 200, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (quoting *Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 711, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (citation omitted) (stating that the simple test for discrimination is "whether the evidence shows 'treatment of a person in a manner which but for that person's sex would have been different' ")).

The plaintiffs-appellants' argument is similar to one this Court has already considered in *Kelley v. Board of Trustees*, 35 F.3d 265 (7th Cir.1994). The plaintiffs in *Kelley* were members of the men's swimming team at the University of Illinois. That program was eliminated in an attempt by that university to cut its athletic budget by getting rid of teams that were not competitive on a national level. Although the men's swimming team at the University of Illinois was eliminated on this basis, the women's swimming program was maintained because of concerns about compliance with Title IX. *Id.* at 269. Members of the University of Illinois's men's swimming team, like the plaintiffs-appellants in this case, challenged the university's cancellation of the athletic program in which they participated as a violation of Title IX. We rejected that challenge, holding that the elimination of men's swimming did not violate Title IX because "men's participation in athletics [continued] to be more than substantially proportionate to their presence in [the University of Illinois's] student body." *Id.* at 270.

The plaintiffs-appellants contend that our decision in *Kelley* is distinguishable from the facts of this case, and is therefore not controlling. In attempting to distinguish *Kelley*, the plaintiffs-appellants rely on the financial and budgetary considerations that motivated the University of Illinois's athletic department to eliminate men's swimming. *See id.* at 269. According to the plaintiffs-appellants, a decision that is motivated by financial concerns, even if it includes sex-based considerations, does not violate Title IX. In contrast, a decision like the one in this case, that is motivated by the sex of the participants, does violate Title IX. In short, the plaintiffs-appellants attempt to draw a distinction between decisions in which sex is a consideration (as in *Kelley*) and decisions in which sex serves as the motivating factor (as in the present case).

We are not persuaded by the plaintiffs-appellants' attempt to distinguish decisions to eliminate athletic programs motivated by financial concerns from those based on considerations of sex. That distinction ignores the fact that a university's decision as to which athletic programs to offer necessarily entails budgetary considerations. For universities, decisions about cutting or adding athletic programs are based on a consideration of many factors including: the total size of the athletic department, which is governed by budgetary considerations, and the distribution of programs among men and women, which is governed by Title IX concerns. To say that one decision is financial, while another is sex-based, assumes that these two aspects can be neatly separated. They cannot. Absent financial concerns, Illinois State University presumably would rather have added women's programs while keeping its men's programs intact. Similarly, in the absence of Title IX concerns, the University of Illinois in *Kelley* would have cut both its men's and women's swimming programs in order to save money.[1] Ultimately, both the decision of the University in this case and the decision of the University of Illinois at issue in *Kelley* were based on a combination of financial and sex-based concerns that are not easily distinguished.

When analyzed against the backdrop of the multiple concerns at work in a university's decision to eliminate an athletic program, the plaintiffs-appellants' argument raises significant practical concerns. In *Kelley*, we held the policy interpretations issued by the Office of Civil Rights to be a reasonable exercise of that agency's congressionally-delegated discretion to interpret the law. *Kelley*, 35 F.3d at 270–71 (holding that the policy guidelines are entitled to deference because they are neither arbitrary or capricious, nor manifestly con-

---

1. This is clearly illustrated by the fact that the University of Illinois "did not eliminate the women's swimming program because the school's legal counsel advised that such action would put the [u]niversity at risk of violating Title IX." *Kelley*, 35 F.3d at 269.

trary to the statute) (citing *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (stating that where Congress has expressly delegated the task of interpretation to an agency the resulting interpretations are to be granted "controlling weight")); see also *Cohen v. Brown Univ.*, 991 F.2d 888, 895 (1st Cir.1993) (stating that "[t]he degree of deference [given to agency interpretations] is particularly high in Title IX cases because Congress explicitly delegated to the agency the task of prescribing standards for athletic programs under Title IX"). Those policy interpretations clearly state that universities may demonstrate compliance with Title IX by showing that participation of the under-represented sex is substantially proportionate to their enrollment at the university. 44 Fed.Reg. 71,418. In light of this interpretation, a holding that universities cannot achieve substantial proportionality by cutting men's programs is tantamount to a requirement that universities achieve substantial proportionality through additional spending to add women's sports programs. This result would ignore the financial and budgetary constraints that universities face. *See Roberts v. Colorado St. Bd. of Agric.*, 998 F.2d 824, 830 (10th Cir.1993) ("[I]n times of economic hardship, few schools will be able to satisfy Title IX's effective accommodation requirement by continuing to expand their women's athletic programs."). Unless we are willing to mandate such spending, the agency's substantial proportionality rule must be read to allow the elimination of men's athletic programs to achieve compliance with Title IX.

The plaintiffs-appellants do not see such potential spending mandates as a problem because they read *Kelley* to permit the elimination of men's programs in order to address budgetary concerns. At the same time, they assume that such financially-motivated decisions can be readily discerned by courts. Yet given the practical difficulty of distinguishing financial and sex-based concerns, the effect of accepting such a distinction would only force universities under serious budget constraints to cast decisions made under the shadow of Title IX as financial ones. To be safe, they might even go so far as to add women's programs in order to create the kind of budgetary constraints that would justify cutting men's programs. In either case, the plaintiffs-appellants would be no better off than they are under existing law. Because we conclude that the plaintiffs-appellants' distinction would place universities in an unmanageable position, we reject the plaintiffs-appellants' attempt to distinguish *Kelley*.

As we noted in *Kelley*, the elimination of men's athletic programs is not a violation of Title IX as long as men's participation in athletics continues to be "substantially proportionate" to their enrollment.[2] *See Kelley*, 35 F.3d at 270. After the elimina-

---

2. In an *amicus* brief to the Court, a group composed of various high school athletic associations argues that Title IX's attempt to prohibit sex based discrimination at federally-funded institutions, when coupled with the use of substantial proportionality as a benchmark for compliance and the budgetary constraints that universities face, has the perverse consequence of forcing institutions to decrease athletic opportunities for men. As the *amici* note, such a result does not, at least when viewed in isolation, benefit women. According to the *amici*, a possible solution to this is to allow institutions subject to suit under Title IX to assert Title VII defenses.

It is difficult to see how Title VII defenses could be applied in Title IX cases. As we stated in *Kelley*, "Congress itself recognized that addressing discrimination in athletics presented a unique set of problems not raised in areas such as employment and academics." *Kelley*, 35 F.3d at 270 (citing Sex Discrimination Regulations, Hearings Before the Subcommittee on Post Secondary Education of the Committee on Education and Labor, 94th Cong., 1st Sess. at 46, 54, 125, 129, 152, 177, 299–300 (1975); 118 Cong. Rec. 5,807 (1972) (statement of Sen. Birch Bayh); 117 Cong. Rec. 30,407 (1971) (same)). Given the unique problems raised by discrimination in athletic opportunity, it would be inappropriate to import a body of law developed in other contexts.

tion of men's soccer and men's wrestling at the University, the athletic participation of men remained within three percentage points of enrollment. The plaintiffs-appellants do not contend that this disparity is outside the requirements of substantial proportionality. Because the University has achieved substantial proportionality between men's enrollment and men's participation in athletics, it is presumed to have accommodated the athletic interests of that sex. *See Kelley*, 35 F.3d at 271; *see also Roberts*, 998 F.2d at 829 (" '[S]ubstantial proportionality' between athletic participation and undergraduate enrollment provides a safe harbor for recipients under Title IX."); *Cohen*, 991 F.2d at 897–98 ("[A] university which does not wish to engage in extensive compliance analysis may stay on the sunny side of Title IX simply by maintaining gender parity between its student body and its athletic lineup."). Under such circumstances, Illinois State University's actions in eliminating the programs at issue do not constitute a violation of Title IX.

**B.**

The plaintiffs-appellants next contend that if Title IX is construed to permit the elimination of men's programs for reasons of sex, then Title IX as interpreted would violate the Equal Protection Clause. The plaintiffs-appellants' argument is based on the idea that discrimination based on sex is permissible only when it is substantially related to an important government objective. *See Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547, 564–65, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990) (establishing an intermediate standard of scrutiny for sex discrimination); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 728, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (same). The plaintiffs-appellants do not challenge the assertion that assisting an under-represented group to achieve additional opportunities would constitute an important government objective. They do argue that when viewed in isolation, the elimination of men's wrestling and men's soccer only served to decrease opportunities for men without providing any additional opportunities for women. As such, the plaintiffs-appellants contend that increased opportunities for women cannot be the important government objective justifying this sex-based discrimination by the University.

As was the case with plaintiffs-appellants' first claim, this Court addressed the equal protection issue in *Kelley* and rejected it. As we held in *Kelley*, "Title IX's stated objective is not to ensure that the athletic opportunities available to women increase. Rather its avowed purpose is to prohibit educational institutions from discriminating on the basis of sex." *Kelley*, 35 F.3d at 272. The elimination of sex-based discrimination in federally-funded educational institutions is an important government objective, and the actions of Illinois State University in eliminating the men's soccer and men's wrestling programs were substantially related to that objective. *See id.* (citing *Mississippi Univ. for Women*, 458 U.S. at 728, 102 S.Ct. 3331 ("[A] gender-based classification favoring one sex can be justified if it intentionally and directly assists members of the sex that is disproportionately burdened.")). In light of these conclusions, we repeat our holding in *Kelley* that "[w]hile the effect of Title IX and the relevant regulation and policy interpretation is that institutions will sometimes consider gender when decreasing their athletic offerings, this limited consideration of sex does not violate the Constitution." *Id.*

**C.**

The plaintiffs-appellants also brought numerous claims against both the University and individual University officials under § 1983 and § 1985(3) of Title 42, arguing that they have a protected property interest in participating in athletics. The district court dismissed these claims under our decision in *Waid v. Merrill Area Public Schools*, 91 F.3d 857 (7th

Cir.1996). In that case, we held that the availability of a Title IX claim preempted claims under § 1983. *Id.* at 862. This holding was based on our interpretation of Title IX's statutory scheme, and our understanding that "Congress saw Title IX as the device for redressing any grievance arising from a violation of federal civil rights by an educational institution." *Id.* at 863. We further determined that, "through the establishment of [Title IX's] statutory regime, Congress effectively superseded a cause of action under § 1983...." *Id.*

### 1. Sex–Based Discrimination Under Section 1983

The plaintiffs-appellants do not dispute the general preemption principle set forth in *Waid*, but they do contend this principle is not applicable to their Section 1983 claims based on sex discrimination. The plaintiffs-appellants' argument rests on the idea that the existence of preemption depends on the availability of a claim under Title IX, and a distinction between claims against institutions and claims against individuals. We have previously held that Title IX provides for suit only against institutions; it does not allow for suits against individual defendants. *Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014, 1019 (7th Cir.1997). The plaintiffs-appellants contend that because individual claims are not available under Title IX, individual claims must be available under Section 1983. Under this interpretation of *Waid*, Title IX preempts only Section 1983 suits against institutions, and the district court erred in dismissing the plaintiffs-appellants' claims against the individual defendants. After a review of our holding in *Waid*, we disagree.

By focusing on the availability of a claim against individual defendants, the plaintiffs-appellants misconstrue the doctrine of preemption. In providing for the remedies available under Title IX, Congress has created a regime for the redress of sex discrimination in athletic opportunities at federally-funded institutions. In order to be comprehensive, that regime need not include possible claims against both the institution and individuals involved. The fact that individual claims are not available under Title IX means that Congress has chosen suits against institutions as the means of redressing such wrongs. *See Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (holding that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983"). As we noted in *Waid*, in establishing Title IX, "Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officials associated with those institutions." *Waid*, 91 F.3d at 862. Here plaintiffs-appellants have a Title IX claim against Illinois State University. Under our holding in *Waid*, the district court was correct in determining that the availability of that claim preempts the remedies available for sex discrimination under Section 1983.

### 2. Race–Based Claims Under Section 1983 and Section 1985(3)[3]

■ The plaintiffs-appellants also contend that the district court erred in dismissing their constitutional claims based on racial discrimination under Section 1983 and Section 1985(3). The district court determined that these claims, like the sex-based claims brought under Section 1983, were preempted by the availability of a Title IX claim. The court reasoned that

**3.** Section 1985(3) provides that "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages...." 42 U.S.C. § 1985(3).

Title IX was the exclusive means Congress provided for the redress of sex discrimination at federally-funded institutions, and that this exclusivity precluded any claim under Section 1983 and Section 1985(3) even in regard to claims based on racial discrimination. While we agree with the district court in regard to sex-based claims, its reasoning as to the race-based claims does not take into consideration that Title IX should serve as the exclusive source of claims against federally-funded institutions only when sex-based discrimination is alleged; when the discrimination at issue is race-based, Title IX preemption does not apply.

 Nevertheless, the district court came to the correct result. The proper means of asserting claims based on allegations of racial discrimination by the University is Title VI, which prohibits "discrimination under any program or activity receiving Federal financial assistance" based on "race, color, or national origin." Civil Rights Act of 1964, § 601 of Title VI, 42 U.S.C. § 2000d. The plaintiffs-appellants made a Title VI claim alleging race discrimination before the district court, and the court resolved that claim against the plaintiffs-appellants on summary judgment.[4] We have previously held that the availability of this claim precludes resort to a Section 1983 claim based on the same allegations of race discrimination. *Alexander v. Chicago Park District*, 773 F.2d 850, 856 (7th Cir.1985) ("[W]e hold that private actions based on Title VI may not be brought under § 1983."). Our logic in *Alexander* was based on our understanding that "where a statute provides its own comprehensive enforcement scheme that scheme may not be bypassed by pleading an underlying violation of the statute and

bringing suit directly under § 1983." *Id.* This logic applies equally to Section 1985(3) claims, because pleading under that statute would also allow plaintiffs to circumvent the comprehensive structure Congress created to address the problem of racial discrimination at federally-funded institutions. *See Great Am. Federal S. & L. v. Novotny*, 442 U.S. 366, 378 (1974) (holding that Title VII may not be bypassed through resort to Section 1985(3)). Where Congress has set up an enforcement mechanism with full remedies, as it has with Title VI, that regulatory structure may not be bypassed by resort to laws of more general applicability like Section 1983 and Section 1985(3). *See National Sea Clammers*, 453 U.S. at 20, 101 S.Ct. 2615; *see also Waid*, 91 F.3d at 862–63 (arguing that "access to the full panoply of judicial remedies" is an indication that Congress intended a statutory regime to be exclusive).

### III. Conclusion

The district court correctly determined that the actions of Illinois State University in eliminating its men's soccer and men's wrestling programs did not violate Title IX or the Equal Protection Clause. The district court also correctly held the plaintiffs-appellants' remaining constitutional claims to be preempted. Accordingly, we AFFIRM the decision of the district court.

AFFIRMED

HARLINGTON WOOD, Jr., Circuit Judge, concurring.

I fully join in this well-reasoned opinion, and only expand on a thought already expressed.

---

4. The district court reasoned that, even assuming the plaintiffs-appellants made a proper statistical showing of disparate impact, the University's desire to comply with Title IX was a legitimate non-discriminatory reason for its actions in eliminating the men's wrestling and men's soccer teams. Once the University presented a legitimate non-discriminatory reason for its actions, the plain-tiffs-appellants were required to come forward with equally effective alternatives with less disparate impact. Because the plaintiffs-appellants failed to carry this burden by providing such alternatives, the district court granted the University's motion for summary judgment on the plaintiffs-appellants' Title VI claim. *See Harper v. Board of Regents*, 35 F.Supp.2d 1118, 1124 (C.D.Ill.1999).

The ideal situation, though not anticipated as a practical matter, might nevertheless sometime surprisingly arise; that would be where a university has the money and the desire to accommodate all its students of either sex who have the interest and sports ability to be competitive. Even if not competitive on a national level, it should suffice to be competitive at least at conference level. The extra sports funding needed may not show up in the budget. However, a school recognizing the many advantages of a broad sports program might be able to tighten up less important aspects of its budget in order to help fund its athletic programs for eligible students of both sexes. The legislature, realizing the situation, might also respond favorably. Under those conditions, I would expect the school not to be curtailed in its sports programs because of a proportionality formula which, in that situation, would be irrelevant. Student athletes would neither be helped nor hindered by the proportionality formula. Participation is more important than percentages.

One point concerning the financial aspect of this case does concern me. In the school's brief, reference is made to "Appellants' implication" that the Athletic Department would have $400,000 in unexpected revenues due to pending legislation which was awaiting the Governor's signature. Plaintiffs argued that, because of the predicted influx of money, this case is distinguished from *Kelley* in that it was not based on both budgetary and gender considerations, but solely upon gender. Plaintiffs asserted that, if received, the $400,000 would have provided sufficient funds to maintain the men's soccer and wrestling teams and add female sports programs. The school does not directly deny that the sum may have, at some point, become available to the Athletic Department. The school's answer is merely that there is nothing in the record about it. As we cannot go outside the record, I am willing to assume that the school is not purposely avoiding a direct answer. However, if that extra money was, in fact, available, I would not decide this case on summary judgment but would send it back for exploration of the Athletic Department's financial situation.