Eric **CHALENOR, Brady Flatten, Chad Lorenson, and Mike Schuster, Plaintiffs,**

v.

The **UNIVERSITY OF NORTH DAKOTA, Defendant.**

No. 2–99cv–170.

United States District Court, D. North Dakota, Northeastern Division.

Aug. 23, 2000.

### MEMORANDUM AND ORDER

WEBB, Chief Judge.

Before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (doc. # 11). As explained herein, the motion is **GRANTED.**

### I. Factual Background

The facts in this case are largely undisputed and fairly uncomplicated; however, where factual disputes exist, plaintiffs' version has been set forth.

Plaintiffs were students at the University of North Dakota (UND), a public higher education institution as defined by 20 U.S.C. § 1681(c), who had been recruited to attend UND by its varsity wrestling coach, Bruce Moe. Plaintiffs came to UND expecting to participate and compete in UND's varsity wrestling program. Unfortunately, UND cancelled the . wrestling program in 1998, according to plaintiffs' complaint, "citing gender equity issues." Compl. ¶ V. According to the complaint, "[d]efendant eliminated the male varsity wrestling program in order to attain proportionality between the gender composition of the student body." *Id.* ¶ VII.

Plaintiffs claim that UND's action in eliminating the wrestling program violates

Title IX as codified at 20 U.S.C. § 1681. UND, accepting the plaintiffs' allegations as true,[1] i.e., that the wrestling program was eliminated in order to attain gender equity, argues that it is entitled to summary judgment since equalizing athletic opportunities for men and women does not violate Title IX. Plaintiffs urge the theory that material issues of fact exist as to UND's actual motivation for eliminating the program which preclude summary judgment. The Court disagrees.

## II. Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). This Court must, of course, view all evidence in the light most favorable to the party opposing the motion, *see Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir.2000), however, that party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Fed. R.Civ.P. 56(e). In the instant case, the defendant's motivation is not a material issue of fact and, accordingly, summary judgment is appropriate.

Title IX of the Education Amendments provides in relevant part that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance[.]

20 U.S.C. § 1681(a). While the provision itself does not explicitly speak to college athletic programs, the regulations promulgated by the agency charged with implementing Title IX, the Department of Health, Education, and Welfare (now the Department of Education), do. *See Cohen v. Brown University*, 991 F.2d 888, 894–95 (1st Cir.1993) (explaining the transformation of the agency) (hereinafter *Cohen II* ). The regulations, in general, provide:

No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient. . . .

34 C.F.R. § 106.41(a). More specifically, the regulations require that:

a recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes.

*Id.* § 106.41(c).

Whether a school is providing equal opportunities to its students is determined by an examination of many factors including "whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." *Id.* An institution may violate Title IX solely by failing to meet this factor. *See Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 273 (6th Cir.1994); *Kelley v. Board of Trustees*, 35 F.3d 265, 268 (7th Cir.1994) (failing

---

1. UND states that actually the primary reason it discontinued the wrestling program was budgetary, but that it took gender equity issues into consideration when it made the decision. Def.'s Br. in Supp. of Mot. for Summ.

J. p. 6. As stated above, UND has, however, accepted plaintiffs' allegations as true for summary judgment purposes and, accordingly, so will the Court.

to accommodate effectively the interests and abilities of both sexes violates Title IX regardless of the nine other factors); *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 828 (10th Cir.1993); *Cohen II*, 991 F.2d at 897–98. In order to encourage self-policing and provide guidance on what constitutes compliance with Title IX, the Department of Health, Education, and Welfare has issued a policy interpretation. 44 Fed.Reg. 71,413; *Kelley*, 35 F.3d at 268. The policy interpretation[2] sets out three benchmarks to determine whether an institution has effectively accommodated the interests of its male and female students:

(1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or

(2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

(3) Where members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion ..., whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Fed.Reg. 71,418. An institution complies with Title IX by meeting one of these benchmarks; the least stringent is benchmark one, which provides a safe harbor for substantial proportionality. *Horner*, 43 F.3d at 275.

Plaintiffs themselves have alleged that UND cut the "wrestling program in order to attain proportionality between the gender composition of athletic teams and the gender composition of the student body." Compl. ¶ VII. This is precisely one of the measures of compliance with Title IX. *See Roberts*, 998 F.2d at 830 (noting that institutions may comply with Title IX by cutting athletic programs such that men's and women's athletic participation rates become substantially proportionate to their representation in the undergraduate population); *Cohen II*, 991 F.2d at 898–99 n. 15 (explaining that a university can bring itself into compliance by reducing the opportunities of the overrepresented gender while keeping opportunities stable for the underrepresented gender). Indeed, the Seventh Circuit Court of Appeals specifically held in *Kelley* that a university's decision to eliminate the men's swimming program, which was primarily motivated by budget considerations, did not violate Title IX because, even after eliminating the program, men's participation in athletics was more than substantially proportionate to their presence within the student body. *Kelley*, 35 F.3d at 269–70. Clearly, the elimination of men's athletic programs is not a violation of Title IX as long as men's participation continues to be substantially proportionate to their enrollment.[3] *See Boulahanis v. Board of Regents*, 198 F.3d 633, 638 (7th Cir.1999).

---

2. The policy interpretation delineates three major areas of compliance: (1) athletic financial assistance; (2) equivalence in other athletic benefits and opportunities; and (3) effective accommodation of student interests and abilities. 44 Fed.Reg. 71,414. *See also Cohen II*, 991 F.2d at 897. This case involves the third area of effective accommodation.

3. While the Eighth Circuit Court of Appeals has yet to address the issue, the Court notes that every sister circuit which has addressed the issue had held as much. *See Neal v. Board of Trustees of Cal. State Universities*, 198 F.3d 763, 769–770 (9th Cir.1999) (noting that every court has held that a university may bring itself into Title IX compliance by

Plaintiffs neither allege nor provide facts supporting a claim that men are now underrepresented in UND's athletic programs. To the contrary, UND provides facts tending to show that despite the elimination of the wrestling program men are still substantially overrepresented in UND athletics. *See* Aff. of Rick Hedberg ¶ 3 (stating that for the 1999–2000 academic year: 50.88% of full-time undergraduate students at UND are male; 64.46% of student athletes are men; and 63.49% of athletically-related student aid goes to male athletes). Under these circumstances, there is no basis for a claim that UND violated Title IX by eliminating its wrestling program.

Plaintiffs' one attempt to raise a material issue of fact relates to the "actual motivation" of UND in eliminating the wrestling program. Plaintiffs argue that outside funding was available for the wrestling program, which casts doubt on UND's motivation in eliminating it. This argument has no bearing on the analysis. There may be many reasons why a university would choose to eliminate an athletic program, notwithstanding the potential for outside funding. *Cf. Boulahanis*, 198 F.3d at 637 (explaining that "decisions about cutting or adding athletic programs are based on a consideration of many factors including: the total size of the athletic department ... and distribution of programs between men and women"). Title IX is chief among these reasons.

For instance, since Title IX is no longer program-specific as to federal funding[4], *see Cohen II*, 991 F.2d at 894, a university may choose to forgo outside funding because it could still conceivably violate Title IX by providing more than substantially proportionate interscholastic, intercollegiate, club or intramural programs to one gender, notwithstanding that those programs are funded by outside sources.[5] *Cf. Cohen v. Brown University*, 101 F.3d 155, 186–187 (1st Cir.1996) (agreeing with the district court that the university's proposed compliance plan fell short of a good faith effort to meet Title IX requirements in part because the plan disregarded the

increasing athletic opportunities for the underrepresented gender (likely women) or by decreasing athletic opportunities for the overrepresented gender (likely men)). Thus, this Court has every reason to believe that the Eighth Circuit would follow a similar approach. Plaintiffs' argument that a university cannot both increase athletic opportunity for women and decrease athletic opportunity for men in order to bring itself into compliance with the "substantial proportionality" benchmark is meritless. *See Cohen v. Brown University*, 101 F.3d 155, 185 (1st Cir.1996) (discussing favorably the district court's pronouncement that Title IX compliance may be achieved in a number of ways including: eliminating the athletic program altogether; elevating or creating women's positions; demoting or eliminating men's positions; or *implementing a combination* of these remedies) (emphasis added). Indeed, this would appear to be one of the most efficient and effective ways of ensuring compliance with that benchmark.

4. Title IX prohibits sex discrimination under any education program or activity receiving federal funds. 20 U.S.C. § 1681(a). Prior to 1987, Title IX had been construed as program-specific and not providing institution-wide coverage. *See Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984). Congress then amended Title IX through the Civil Rights Restoration Act of 1987. The effect of the amendment is that if any part of a covered institution, like UND, receives federal financial assistance then the institution as a whole must comply with Title IX. *See Horner*, 43 F.3d at 271.

5. This, of course, assumes that the university also does not conform with either of the other alternative compliance benchmarks: continuing expansion or full and effective accommodation.

fact that 76 men and 30 women participated on donor-funded varsity teams). In other words, it is not clear that "outside funding" is a defense to a university which provides more than substantially proportionate athletic opportunity to one gender in violation of Title IX.

 Moreover, this Court believes that "outside funding" is not and should not be such a defense. According to Title IX's primary sponsor, Senator Birch Bayh, this legislation was enacted to "provide for the women of America something that is rightfully theirs—*an equal chance* to attend the schools of their choice, to develop the skills they want, and to apply those skills with the knowledge that they will have a fair chance to secure the jobs of their choice with equal pay for equal work." 118 Cong. Rec. 5808 (1972) (emphasis added); *Neal*, 198 F.3d at 766. As applied to athletics, Title IX's prohibition against sexual discrimination means that schools which receive federal funding must "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c). Equal opportunity is the key. *Cohen II*, 991 F.2d at 897. As the regulations make clear, providing the necessary funding for athletic programs for both sexes is an important part of providing equal opportunity; it is not, however, the gravamen of Title IX.[6] A school may not skirt the requirement of providing both sexes equal opportunity in athletic programs by providing one sex more than substantially proportionate opportunity through the guise of "outside funding." Simply put, money is not a justification for discrimination.

 Other courts have recognized as much, albeit in a different context. For instance, in *Roberts*, students and former members brought suit under Title IX when Colorado State University (CSU) eliminated its women's fast pitch softball team. Evaluating CSU's compliance with the three benchmarks, the Tenth Circuit Court of Appeals noted:

> We recognize that in times of economic hardship, few schools will be able to satisfy Title IX's effective accommodation requirement by continuing to expand their women's athletic programs.... Financially strapped institutions may still comply with Title IX by cutting athletic programs such that men's and women's athletic participation rates become substantially proportionate to their representation in undergraduate population.

*Roberts*, 998 F.2d at 830. Likewise in *Cohen II*, the First Circuit Court of Appeals explained:

> Title IX does not require that a school pour ever-increasing sums into its athletic establishment. If a university prefers to take another route, it can also bring itself into compliance with the first benchmark of the accommodation test by subtraction and downgrading, that is, by reducing opportunities for the over-represented gender while keeping opportunities stable for the underrepresented gender.

*Cohen II*, 991 F.2d at 898–99 n. 15. These cases support the proposition that financial problems do not excuse compliance with Title IX. In other words, "a recipient may not simply plead limited resources to ex-

---

**6.** This same section of the regulations mandating equal opportunity for members of both sexes by a recipient also provides that "unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams ... will not constitute non-compliance with this section;" instead the failure to provide necessary funds for teams of one sex may be considered in assessing equality of opportunity. 34 C.F.R. § 106.41(c).

cuse the fact that there are fewer opportunities for girls than for boys." *Horner*, 43 F.3d at 275. The converse is also true—abundant resources for boys in the form of outside funding does not excuse the fact that girls are given fewer opportunities.

In sum, this Court views UND's motivation in forgoing outside funding as irrelevant to the claim asserted in the complaint. UND has not violated Title IX by eliminating its wrestling program since men are still substantially overrepresented within the university's athletic programs. As such, plaintiffs' request to continue consideration of this motion to allow for further discovery is pointless and therefore **DENIED.**

### III. Conclusion

Accordingly, based on the foregoing, and upon review of all files, records and proceedings herein,

**IT IS ORDERED** that defendant's motion for summary judgment, (doc. # 11) is **GRANTED.**

Let Judgment be entered accordingly.