**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1914**

EQUITY IN ATHLETICS, INCORPORATED,

Plaintiff - Appellant,

v.

THE UNITED STATES DEPARTMENT OF EDUCATION; MARGARET SPELLINGS,
Secretary of Education, in her official and individual
capacity; STEPHANIE MONROE JOHNSON, Assistant Secretary for
Civil Rights, in her official and individual capacity; UNITED
STATES OF AMERICA; JAMES E. HARTMAN, Visitor; JEFFREY T.
BOURNE, Athletics Director; MARK T. BOWLES, Visitor; JAMES
SCOTT BRIDGEFORTH, Visitor; JOSEPH F. DAMICO, Rector; RONALD
C. DEVINE, Visitor; LOIS J. FORBES, Visitor; CHARLES H.
FOSTER, Visitor; JOHN GROVER, Visitor; JAMES MADISON
UNIVERSITY; STEPHEN R. LEEOLOU, Visitor; E. RAY MURPHY,
Visitor; WHARTON B. RIVERS, Visitor; LARRY M. ROGERS, Visitor;
LINWOOD H. ROSE, President; JUDITH STRICKLER, Visitor;
MEREDITH STROHM GUNTER, Vice Rector; THE VISITORS OF JAMES
MADISON UNIVERSITY; LINDA ZECHER, Visitor; JOHN DOES, 1-200,
in their official and/or individual capacity; JOHN DOE,
Entities 1-200,

Defendants - Appellees.

-------------------------------------------

AMERICAN ASSOCIATION OF UNIVERSITY WOMEN; NATIONAL WOMEN'S LAW
CENTER; WOMEN'S SPORTS FOUNDATION,

Amici Supporting Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg. Glen E. Conrad, District
Judge. (5:07-cv-00028-gec)

Argued:  March 18, 2008                  Decided:  August 20, 2008

Before MICHAEL and GREGORY, Circuit Judges, and David R. HANSEN, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by unpublished opinion.  Senior Judge Hansen wrote the opinion, in which Judge Michael and Judge Gregory joined.

**ARGUED:** Lawrence John Joseph, Washington, D.C., for Appellant. William Eugene Thro, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Thomas Mark Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Douglas G. Schneebeck, MODRALL SPERLING, Albuquerque, New Mexico, for Appellant. Jeffrey S. Bucholtz, Acting Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, Appellate Section, Washington, D.C.; John L. Brownlee, United States Attorney, Roanoke, Virginia; Barbara C. Biddle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Federal Appellees. Robert F. McDonnell, Attorney General of Virginia, Stephen R. McCullough, Deputy State Solicitor General, William C. Mims, Chief Deputy Attorney General, John F. Knight, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for the University Appellees. Jocelyn Samuels, Dina R. Lassow, NATIONAL WOMEN'S LAW CENTER, Washington, D.C., for Amici Supporting Appellees.

Unpublished opinions are not binding precedent in this circuit.

HANSEN, Senior Circuit Judge:

Equity in Athletics, Inc. ("EIA") sought a preliminary injunction to prevent James Madison University ("JMU") from eliminating seven men's sports and three women's sports from its intercollegiate athletic program. EIA claimed that JMU intentionally discriminated against male athletes in violation of the United States Constitution and in violation of Title IX of the Education Amendments of 1972. Because the district court did not abuse its discretion in concluding that EIA failed to meet the Blackwelder[1] factors, we affirm the district court's denial of EIA's motion for a preliminary injunction.

I.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX did not specifically address its application to athletics, and in 1974, Congress directed the Secretary of Health, Education, and Welfare ("HEW") to promulgate regulations, "which shall include with respect to intercollegiate athletic activities reasonable provisions

--------

[1]Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).

considering the nature of particular sports." McCormick v. Sch. Dist. of Mamaronek, 370 F.3d 275, 287 (2d Cir. 2004) (quoting Education Amendments of 1974, Pub. L. No. 93-380, § 844, 88 Stat. 484, 612 (1974)). HEW followed the rulemaking procedures in promulgating 45 C.F.R. § 86.41 in 1975, which provides that "[a] recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes." § 86.41(c). One of the ten factors listed as assisting in that determination is "[w]hether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." § 86.41(c)(1).[2]

EIA does not contest the validity of 45 C.F.R. § 86.41. Rather, at issue here is a Policy Interpretation issued by HEW in 1979 intended to provide further guidance for the 1975 regulation and subsequent clarifications of the Policy Interpretation. The Policy Interpretation provides, in part, that:

> [I]nstitutions must provide both the opportunity for individuals of each sex to participate in intercollegiate competition, and for athletes of each sex to have

---

[2]Congress divided HEW into two agencies in 1979, the Department of Health and Human Services and the Department of Education ("DOE"). "HEW's functions under Title IX were transferred . . . to the [DOE]." N. Haven Bd. of Educ. v. Bell, 456 U.S. 512, 516 n.4 (1982) (citing 20 U.S.C. § 3441(a)(3)). The DOE subsumed functions from five separate departments and subsequently consolidated the regulations of those five departments into one title of the Code of Federal Regulations at Title 34. DOE recodified 45 C.F.R. § 86.41 at 34 C.F.R. § 106.41.

> competitive team schedules which equally reflect their abilities.
> (a) Compliance will be assessed in any one of the following ways:
> (1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments. . . .

44 Fed. Reg. 71,413, 71,418 (Dec. 11, 1979) ("1979 Policy Interpretation"). This provision, which also lists two other methods of compliance not at issue here, has come to be known as the "Three-Part Test." The DOE issued a Clarification to the 1979 Policy Interpretation in 1996, indicating that institutions needed to comply with only one part of the Three-Part Test; DOE issued a Further Clarification in 2003, expressing that the 1979 Policy Interpretation did not require reductions to men's teams or the use of quotas; and it issued an Additional Clarification in 2005, reiterating that each part of the Three-Part Test was an equally sufficient and separate method of complying with Title IX.

James Madison University (JMU) is a state-sponsored university in Virginia and receives federal funds. In an effort to comply with Title IX with respect to its athletic program, JMU's Board of Visitors voted on September 29, 2006, to eliminate seven men's sports (archery, cross country, gymnastics, indoor and outdoor track, swimming, and wrestling) and three women's sports (archery, fencing, and gymnastics) to obtain proportionality between the gender makeup of its athletic programs and its undergraduate

5

enrollment. At the time, JMU's undergraduate population was divided 61% female and 39% male, while its student athletes were 51% female and 49% male. The proposed cuts relied on the first part of the Three-Part Test and were designed to put JMU's student-athlete population in a similar male/female ratio as its general student population. The Board issued a press release explaining its decision the same day. It also issued a "Title IX Statement" on February 8, 2007, further addressing the reasoning behind the cuts, which were to be effective as of July 1, 2007.

Athletes, coaches, and fans formed EIA, a not-for-profit organization, to fight the proposed cuts. EIA filed suit in federal court against the DOE, the Secretary of Education, the Assistant Secretary for Civil Rights, the United States (collectively "the federal defendants"), and various John Does on March 19, 2007. EIA challenged the Title IX interpretive guidelines, specifically the Three-Part Test and its subsequent clarifications, as violating the Constitution, Title IX, and the Administrative Procedures Act and as permitting colleges to engage in the kind of gender-conscious decisionmaking that Title IX was intended to prohibit. EIA sought declaratory and injunctive relief that would vacate the allegedly unlawful guidelines and would require the DOE to issue new rules consistent with Title IX and the Constitution.

EIA subsequently requested JMU to defer implementing the decision to cut the programs until EIA's challenge to the federal guidelines was complete. JMU declined, and EIA amended its complaint to include JMU as a defendant on June 1, 2007. EIA filed a motion for a preliminary injunction on June 15, 2007, addressed solely against JMU, seeking to prevent JMU from taking any additional steps to eliminate the targeted programs. After holding an evidentiary hearing, the district court denied the motion on August 21, 2007. See Equity in Athletics, Inc. v. Dep't of Educ., 504 F. Supp. 2d 88 (W. D. Va. 2007). EIA brings this interlocutory appeal. See 28 U.S.C. § 1292(a)(1).

## II.

We review the district court's denial of a motion for a preliminary injunction for an abuse of discretion, accepting its factual findings unless they are clearly erroneous and reviewing its legal conclusions *de novo*. See Child Evangelism Fellowship of Md., Inc. v. Montgomery County Pub. Sch., 373 F.3d 589, 593 (4th Cir. 2004). "In determining whether to grant a preliminary injunction, a court must balance: (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied; (2) the likelihood of harm to the defendant if it is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." Id. (referring to the Blackwelder factors).

7

Our court places the most emphasis on the first two factors, the balancing of the harms. See In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003). If the balance is fairly equal, a stronger showing of likelihood of success is required. However, if the balance of harm tilts more decidedly toward the moving party, the party can meet the likelihood of success factor by raising questions about the merits that are sufficiently "serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Id. We are mindful nonetheless that the four factors "are intertwined and each affects in degree all the others." Blackwelder, 550 F.2d at 196; see also Quince Orchard Valley Citizens Ass'n v. Hodel, 872 F.2d 75, 79 (4th Cir. 1989) ("[I]f the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify the issuance of the injunction." (internal marks omitted)). We give deference to the district court's balancing of the harms. See U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 289 (4th Cir. 2006) ("In balancing the relative harms, . . . the district court did not abuse its discretion."); Faulkner v. Jones, 10 F.3d 226, 229 (4th Cir. 1993) ("Balancing the relative harms of the parties on a scale adjusted by the plaintiff's likelihood of success on the merits, we now conclude that the district court did not abuse its discretion in issuing the preliminary injunction . . . .").

The district court determined that the balance of harms was not so decidedly in EIA's favor that a lesser showing of likelihood of success on the merits was warranted. See Ciena Corp. v. Jarrard, 203 F.3d 312, 323 (4th Cir. 2000) (noting that the likelihood of success on the merits can be reduced when the balance of harms "tilts sharply and clearly in the plaintiff's favor" (internal marks omitted)). The district court recognized the harm to the student-athletes of not being able to compete in the sport and at the university of their choice, but it also noted that the student-athletes would not lose their scholarship funding if they chose to stay at JMU and that the students were free to transfer to other colleges offering their chosen sport, which some of the students had done, so that those athletes were still able to compete at the college level. On the other side of the scale, the district court recognized the harm to JMU of not having control over which athletic programs it offered and the administrative difficulty and the cost to JMU of having to reinstate the eliminated programs. The court gave significant weight to the timing of EIA's request for a preliminary injunction. JMU approved and publicized the program cuts on September 29, 2006, and issued its Title IX Statement on February 8, 2007. EIA filed its initial suit against the federal defendants on March 19, 2007, but it did not make JMU a party to the suit until June 1, 2007. Further, the motion for a preliminary injunction was not filed until June 15,

9

2007, a mere fifteen days prior to the date the cuts were scheduled to go into effect.  In anticipation of the upcoming college year, coaches had already been terminated, competitions had been cancelled, and $350,000 in funding had been reallocated to other athletic programs.  See Quince Orchard Valley Citizens Ass'n, 872 F.2d at 79-80 ("[A] period of delay may . . . indicate an absence of the kind of irreparable harm required to support a preliminary injunction." (internal marks omitted)).  Upon review, the balance of the harms here is not so one-sided that we can say that the district court either abused its discretion or clearly erred in its identification and assessment of the harms.  Cf. Cohen v. Brown Univ., 991 F.2d 888, 904-05 (1st Cir. 1993) (Cohen I) (holding that the record supported, though it did not compel, the district court's finding of irreparable injury to women athletes seeking to enjoin Brown University from cutting its volleyball and women's gymnastics teams against Brown's claim of financial harm and upholding the district court's conclusion against an abuse of discretion standard); Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984) (accepting district court's balancing between potential Olympic athletes' harm in missing once-in-a-lifetime Olympic opportunity and the incremental burden on the Olympics organization committee if it had to organize two additional track and field events for women where the district court found the athletes' harm outweighed the harm to the Olympic committee, but

denied a preliminary injunction based on the failure to show a likelihood of success on the merits).

Absent an "imbalance of hardship in favor of the plaintiff, then the probability of success begins to assume real significance, and interim relief . . . require[s] a clear showing of a likelihood of success." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (internal marks omitted). EIA spends most of its time trying to convince us that the 1979 Policy Interpretation was not properly promulgated, and therefore it is void *ab initio* and is not entitled to any deference. We are limited in this interlocutory appeal, however, to addressing only those issues relevant to the denial of the motion for a preliminary injunction, a motion addressed only against JMU. EIA's claims against JMU allege that JMU engaged in intentional discrimination in violation of Title IX, the Constitution's equal protection guarantee, substantive due process of law, and the Virginia Human Rights Act. Specifically, EIA argues that Title IX requires that schools provide "equal opportunity" based on "athletic interest," not "equal participation" based on "enrollment." EIA also argues that using gender as a factor to determine which programs to cut amounts to intentional gender discrimination.[3] We focus our attention on

---

[3]EIA also raises a First Amendment right of association claim for athletes participating in sports that were not cut but who wish to train with the athletes whose sports were cut. EIA clarified during oral argument that it was not asserting a separate First Amendment cause of action, but raised the issue for purposes of

11

these claims against JMU in assessing whether EIA has sufficiently established a likelihood of success on the merits to entitle it to a preliminary injunction against JMU.

Courts have consistently rejected EIA's underlying claim that equal opportunity under § 86.41 should be tied to expressed interest rather than actual participation. See Neal v. Bd. of Trs. of Cal. State Univ., 198 F.3d 763, 767 (9th Cir. 1999) (reversing grant of preliminary injunction, noting that "Appellees' argument that equal opportunity is achieved when each gender's athletic participation roughly matches its interest in participating is hardly novel," and that "[s]everal courts of appeals have considered and rejected Appellees' approach as fundamentally inconsistent with the purpose of Title IX"); Boulahanis v. Bd. of Regents, 198 F.3d 633, 638-39 (7th Cir. 1999) ("[T]he elimination of men's athletic programs is not a violation of Title IX as long as men's participation in athletics continues to be 'substantially proportionate' to their enrollment."), cert. denied, 530 U.S. 1284 (2000); Cohen v. Brown Univ., 101 F.3d 155, 174 (1st Cir. 1996) (Cohen II) ("Brown's relative interests approach cannot withstand scrutiny on either legal or policy grounds, because it disadvantages women and undermines the remedial purposes of Title

---

arguing that the Equal Protection claim deserved a heightened level of scrutiny. However, EIA offers no authority for such an argument, and we note that gender-based Equal Protection claims already enjoy a heightened level of scrutiny. See Knussman v. Maryland, 272 F.3d 625, 635 (4th Cir. 2001) ("[A] gender classification is subject to heightened scrutiny.").

12

IX by limiting required program expansion for the underrepresented sex to the status quo level of relative interests." (internal citations and marks omitted)), cert. denied, 520 U.S. 1186 (1997). Courts have also rejected Equal Protection claims similar to EIA's constitutional claims against JMU.  See Neal, 198 F.3d at 773 ("Title IX does not bar universities from taking steps to ensure that women are approximately as well represented in sports programs as they are in student bodies."); Boulahanis, 198 F.3d at 639 (rejecting equal protection challenge and holding that "[t]he elimination of sex-based discrimination in federally-funded educational institutions is an important government objective, and the actions of Illinois State University in eliminating the men's soccer and men's wrestling programs were substantially related to that objective"); Kelley v. Bd. of Trs., 35 F.3d 265, 272 (7th Cir. 1994) ("To the extent that plaintiffs' argument is that Title IX and the applicable regulation . . . are unconstitutional, it is without merit."), cert. denied, 513 U.S. 1128 (1995).

Although many of these cases rely, at least in part, on the 1979 Policy Interpretation and its Three-Part Test, many of them rejected claims that the Policy Interpretation was inconsistent with Title IX itself or violated the Constitution.  See McCormick, 370 F.3d at 290 (finding the 1979 Policy Interpretation to be "both persuasive and not unreasonable" in implementing Title IX); Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 615 (6th Cir.

13

2002) (finding the 1979 Policy Interpretation consistent with Title IX); <u>Neal</u>, 198 F.3d at 770-71 ("[T]he plain meaning of the nondiscrimination principle set forth in 20 U.S.C. § 1681(a) does not bar remedial actions designed to achieve substantial proportionality between athletic rosters and student bodies."); <u>Cohen I</u>, 991 F.2d at 899 (holding that the 1979 Policy Interpretation "stands upon a plausible, if not inevitable, reading of Title IX"); <u>see</u> <u>also</u> <u>Chalenor v. Univ. of N.D.</u>, 291 F.3d 1042, 1047 n.4 (8th Cir. 2002) ("[T]he [Policy] [I]nterpretation has guided the Office for Civil Rights' enforcement of nondiscrimination in athletics for over two decades, without change from Congress. No court has ever held it to be invalid.").

Even if the promulgation of the 1979 Policy Interpretation involved procedural irregularities as EIA argues, the cases discussed above raise a serious doubt about whether EIA will be successful on the merits of its claims against JMU that JMU violated Title IX or the Constitution in using gender to select which athletic programs to cut. <u>See</u> <u>Kelley</u>, 35 F.3d at 272 ("[I]nsofar as the University actions were taken in an attempt to comply with the requirements of Title IX, plaintiffs' attack on those actions is merely a collateral attack on the statute and regulations and is therefore impermissible."). While EIA's claims against the federal defendants concerning the procedural validity of the 1979 Policy Interpretation raise novel issues, EIA offers no case directly on point that supports its challenge to the

14

procedural validity of the 1979 Policy Interpretation.  In the end, there are no cases directly supporting EIA's procedural challenges to the 1979 Policy Interpretations, and yet nearly every circuit in the country has rejected challenges similar to EIA's underlying complaint against JMU, i.e., that JMU violated Title IX and the Constitution when it used gender to determine which athletic programs to cut.  We agree with the district court that EIA has failed to establish a likelihood of success on its claims against JMU sufficient to entitle it to a preliminary injunction.

The final factor to be considered on a motion for a preliminary injunction is the public interest.  The district court sympathized with the student-athletes affected by the cuts, characterizing them as "innocent victims" of Title IX's remedial effects.  Given the current state of the law related to Title IX's effect on athletic programs, however, the district court did not clearly err in determining that the public interest favored JMU's ability "to chart [its] own course in providing athletic opportunities without judicial interference or oversight, absent a clear showing that [it is] in violation of the law."  504 F. Supp. 2d at 112 (internal marks omitted).


III.

EIA has failed to establish that the district court abused its discretion in applying the Blackwelder factors and in rejecting

15

EIA's motion for a preliminary injunction.  We affirm the district court's judgment.

AFFIRMED